IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 7, 2017

**JAMES CLARK, JR. v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 91-07308, 91-07309, 91-07310, 91-07311, 91-07312, 91-07313, 91-07314**
**James M. Lammey, Judge**

_____

**No. W2017-00196-CCA-R3-ECN**

_____

The Petitioner, James Clark, Jr., appeals pro se from the Shelby County Criminal Court's summary dismissal of his petition for writ of error coram nobis. He contends that the coram nobis court erred in dismissing the petition. Upon review, we affirm the judgment of the coram nobis court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

James Clark, Jr., Pikeville, Tennessee, pro se.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Glen Baity, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

In 1992, a Shelby County jury convicted the Petitioner and co-defendant Richard[1] Honaker of two counts of aggravated burglary, two counts of especially aggravated robbery, and three counts of theft of property over $1,000. *State v. James Clark and Richard Gene Honaker*, No. 02C01-9206-CR-00149, 1993 WL 414015, at *1 (Tenn.

_____

[1] We note that co-defendant Honaker's first name appears as both "Richard" and "Ronald" in prior opinions.

Crim. App. Oct. 20, 1993), *perm. app. denied concurring in results only* (Tenn. May 16, 1994). The Petitioner was also convicted of two counts of attempt to commit first degree murder, and Honaker was convicted of two counts of attempt to commit second degree murder. *Id.* The trial court sentenced the Petitioner to an effective sentence of 127 years and Honaker to an effective sentence of forty years. *Id.* On direct appeal, this court affirmed the Petitioner's and Honaker's judgments of conviction, and the Tennessee Supreme Court denied further appellate review. *Id.* at *8.

This court provided the following summary of the facts underlying the offenses:

On April 23, 1991, Ronald Honaker entered a Memphis pawn shop at approximately 11:30 a.m. and indicated that he had numerous items to sell. Honaker was wearing a distinctive Michael Jordan t-shirt which was later identified as one stolen, along with other items, from the homes of Dabney Shelton and Jacqueline Bland. The clerk accompanied Honaker outside to look at the items which were in the back of a black G.M. pick-up truck. The clerk became suspicious when he noticed that there were several television sets, Nintendo games, baseball gloves, and other items jumbled together under a rug. He also noticed [the Petitioner] sitting behind the steering wheel of the truck. [The Petitioner] and Honaker had a short discussion regarding the price of the items in the truck.

The clerk returned to the store and spoke to the manager who also went to inspect the items in the truck. The manager noticed that there was a purple cloth wrapped around the steering column of the truck. The price of the goods was again discussed with Honaker and [the Petitioner]. In the meantime, the clerk called the police.

While waiting for the police, the manager had the appellants carry the items into the pawn shop where he tested them to see if they were operable. Officer James Woods and Officer Charles Woods (no relation) arrived and apprehended [] Honaker as he was coming out of the pawn shop. Honaker was placed in the police car. Officer Charles Woods entered the pawn shop and came out with [the Petitioner]. After giving both suspects a "quick shake down" and locking them in the patrol car, the officers called for back-up assistance. Ultimately, the victims of the burglaries came to the pawn shop and identified their belongings and the truck. Shelton identified the t-shirt worn by [] Honaker as one belonging to her son. None of the victims had personal knowledge concerning the identity of the persons who had burglarized their homes.

Honaker and Clark, with their hands handcuffed behind their backs, were interviewed separately by the investigative team and then returned to the backseat of the patrol car for transport. At some point prior to leaving the parking lot, [the Petitioner] managed to free one hand. In [the Petitioner's] possession was a .25 caliber pistol which Honaker later admitted he had taken from the home of one of the burglary victims.

Several blocks after leaving the pawn shop, [the Petitioner], who was seated behind the driver, James Woods, pulled out the pistol and shot Officer Charles Woods twice in the head. [The Petitioner] then ordered Officer James Woods to pull over. The police officer swerved the cruiser into a parking lot, slammed on the brakes, and rammed into a trailer parked in the lot. As Officer James Woods jumped from the car, [the Petitioner] shot the officer in the back of the head. [The Petitioner] broke the window next to his elbow, opened the door, climbed into the driver's seat, and sped away. Officer James Woods fired a number of shots at the car as it left the lot.

As he drove away, [the Petitioner] reached over and removed the revolver from Officer Charles Woods' holster and pointed it at the officer seated in the passenger seat next to [the Petitioner]. Honaker, still handcuffed in the backseat, began yelling at [the Petitioner] to shoot the officer, stop the car, and remove his handcuffs. Officer Charles Woods, who had not lost consciousness, managed to open the passenger door with his foot and, as the car made a sharp left turn, rolled out of the vehicle.

[The Petitioner] and Honaker were apprehended a short time later without struggle from their hiding place under a roll of carpet beneath a viaduct. The .25 caliber pistol was in [the Petitioner's] back pocket. He showed officers where he had thrown Officer Charles Woods' revolver. A few minutes later [the Petitioner] spontaneously confessed to the arresting officer that he shot the officers to avoid going back to prison.

*Id.* at *1-2.

In March 2007, the Petitioner filed a petition for post-conviction relief, which the post-conviction court dismissed as untimely. *James W. Clark, Jr. v. State*, No. W2007-01260-CCA-R3-PC, 2009 WL 2991518, at *1 (Tenn. Crim. App. Sept. 18, 2009), *perm. app. denied* (Tenn. Mar. 25, 2010). This court affirmed the summary dismissal of the petition, and the Tennessee Supreme Court denied the Petitioner's application for further review. *Id.* at *6.

The Petitioner then filed a petition for writ of error coram nobis in November 2013, challenging only his convictions for aggravated burglary and theft. *James Clark v. State*, No. W2014-00514-CCA-R3-ECN, 2015 WL 177076, at *2 (Tenn. Crim. App. Jan. 14, 2015). The Petitioner alleged that Honaker had "admitted to participating in the burglaries by himself" and that Honaker was "ready to exonerate" the Petitioner as to the burglaries and thefts. *Id.* The trial court summarily dismissed the petition due, in part, to the Petitioner's failure to attach an affidavit from Honaker to the petition. *Id.* This court affirmed the trial court's dismissal of the petition on appeal based on the lack of a supporting affidavit from Honaker, the Petitioner's failure to state when Honaker made the alleged statements, and our conclusion that the allegation did not present a cognizable claim for error coram nobis relief. *Id.* at *4. Regarding the failure to state a cognizable claim, this court explained:

> The procedural defects in the petition notwithstanding, the Petitioner's allegations still do not present a cognizable claim for error coram nobis relief. The Petitioner was convicted on a theory of criminal responsibility for the burglaries and thefts.
>
> > A person is criminally responsible for an offense committed by the conduct of another, if . . . [a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense.
>
> Tenn. Code Ann. § 39-11-402(2). Here, the Petitioner was found at a pawn shop behind the steering wheel of a stolen truck, loaded with other stolen items, a short time after the burglaries and thefts. The Petitioner, along with Honaker, then negotiated with the employees of the pawn shop over the price of the stolen items. Additionally, the Petitioner "admitted that he shot two police officers, robbed one officer of his weapon, and stole a police car to avoid going back to jail for the burglaries." *[James] Clark*, 1993 WL 414015, at *3. As such, there was overwhelming evidence that the Petitioner, with at least the intent to benefit in the proceeds of the offenses, aided Honaker with respect to the burglaries and thefts. Therefore, a statement from Honaker, made twenty-three years after the fact, that the Petitioner did not participate in the burglaries and thefts fails to show that there may have been a different judgment if it had been presented at trial.

*Id.* at * 3.

- 4 -

In May 2015, the Petitioner filed various pleadings, including: a petition for writ of error coram nobis; petition for writ of habeas corpus; motion to reopen post-conviction proceedings; motion to amend the petition for writ of habeas corpus; and a motion to correct illegal sentence. *James W. Clark, Jr. v. State*, No. W2015-01828-CCA-R3-PC, 2016 WL 4690876, at *2 (Tenn. Crim. App. Aug. 30, 2016) (Memorandum Opinion), *perm. app. denied* (Tenn. Dec. 16, 2016). In his petition for writ of error coram nobis, the Petitioner again alleged that he had newly discovered evidence in the form of Honaker's admission that the Petitioner did not participate in the burglaries. *Id.* In his motion to reopen post-conviction proceedings, the Petitioner raised claims of ineffective assistance of counsel based on trial counsel's failure to adequately investigate the case. *Id.* He further alleged that he had newly discovered evidence of actual innocence based on Honaker's admissions and based on alleged evidence that one of the shooting victims, Officer Charles Woods, had been arrested and indicted for aggravated rape in 1986. *Id.* The trial court summarily dismissed the petitions, and this court affirmed the dismissal in a memorandum opinion pursuant to Tennessee Court of Criminal Appeals Rule 20. *Id.* Our supreme court then denied the Petitioner's application for further review. *Id.*

On September 8, 2016, the Petitioner filed a third petition for writ of error coram nobis. The Petitioner alleged as grounds for relief that he had newly discovered evidence that he "did not commit burglary or theft," including an affidavit from Honaker in which Honaker recanted his statement to police implicating the Petitioner, fingerprints from the crime scenes showing only Honaker's fingerprints, and a police report containing Ms. Stewart's statement which appeared to indicate that she saw only one man commit the offense(s). Additionally, the Petitioner alleged a *Brady* violation based on the State's failure to provide the Petitioner with the arrest history of one of the victims, Officer Charles Woods, whom the Petitioner asserts was arrested and indicted for aggravated rape in 1986. He argued that, with this evidence, he could have "[e]ffectively cross-examined/impeached [O]fficer [Charles] Woods['s] character and credibility for truthfulness . . . based on his prior bad acts . . . ." The Petitioner attached various documents to the petition, including affidavits from Honaker, the Petitioner, Barbara Long,[2] and the alleged victim in Officer Charles Woods's rape case. The Petitioner also acknowledged the untimeliness of his petition but argued that he was entitled to due process tolling.

---

[2] In Ms. Long's affidavit, she explained that she hired a private investigator in 2010 to obtain evidence relating to the Petitioner's error coram nobis claims, and she described the process and timeline in which the evidence was collected.

On October 24, 2016, the trial court entered an order summarily dismissing the petition.[3] The trial court found that the petition did not satisfy the requirement that "newly discovered evidence would have resulted in a different judgment[.]" This timely appeal follows.

## Analysis

On appeal, the Petitioner contends that: (1) the trial court used an erroneous standard of review in assessing his coram nobis claims; (2) the chairperson of the Tennessee Board of Judicial Conduct "should have recused himself [because] he . . . prosecuted the Petitioner";[4] (3) he was denied the effective assistance of counsel; (4) he did not knowingly and understandingly waive any grounds for post-conviction or error coram nobis relief; (5) the trial court erred by failing to "consider[] whether identical grounds may often be proved by different factual allegations"; and (6) the trial court erred by failing to consider "the constitutional rights that were violated in the Petitioner's case during the trial and sentencing process." The State responds that the petition is untimely and that the issues raised in the petition fail to state a cognizable claim, or they are previously determined.

### Writ of Error Coram Nobis

A writ of error coram nobis is an "extraordinary procedural remedy," filling only a "slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999) (internal citation omitted). Tennessee Code Annotated section 40-26-105(b) provides that coram nobis relief is available in criminal cases as follows:

> The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to

---

[3] The trial court's order indicates that the State filed a response to the petition for writ of error coram nobis; however, the response does not appear in the record.

[4] Regarding this claim, the Petitioner asserts in his brief that he filed a complaint against the trial court judge, while the Petitioner's previous writ of error coram nobis case was on appeal with this court but that the complaint was dismissed by the Board of Judicial Conduct. The Petitioner argues that there was a conflict of interest in this process because the chairperson of the Board of Judicial Conduct was the original prosecutor in the Petitioner's case.

matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

Unlike the grounds for reopening a post-conviction petition, the grounds for seeking a petition for writ of error coram nobis are not limited to specific categories. *See Harris v. State*, 102 S.W.3d 587, 592 (Tenn. 2003). "Coram nobis claims may be based upon any 'newly discovered evidence relating to matters litigated at the trial' so long as the petitioner establishes that he or she was 'without fault' in failing to present the evidence at the proper time." *Id.* at 592-93. Coram nobis claims are "singularly fact-intensive," are not easily resolved on the face of the petition, and often require a hearing. *Id.* at 593.

> [I]n a coram nobis proceeding, the trial judge must first consider the newly discovered evidence and be 'reasonably well satisfied' with its veracity. If the defendant is 'without fault' in the sense that the exercise of reasonable diligence would not have led to a timely discovery of the new information, the trial judge must then consider both the evidence at trial and that offered at the coram nobis proceeding in order to determine whether the new evidence *may have* led to a different result.

*State v. Vasques*, 221 S.W.3d 514, 527 (Tenn. 2007) (emphasis in original).

With respect to claims of "newly discovered" evidence, "the evidence must have been unknown to the defendant at the time of the proceedings giving rise to his conviction." *Wlodarz v. State*, 361 S.W.3d 490, 506 (Tenn. 2012), *abrogated on other grounds by Frazier v. State*, 495 S.W.3d 246, 248 (Tenn. 2016). Newly discovered evidence that "is merely cumulative or serves no other purpose than to contradict or impeach does not warrant the issuance of the writ." *Wlodarz*, 361 S.W.3d at 499 (internal citation and quotation marks omitted). In determining whether the new information may have led to a different result, the question before the court is "whether a reasonable basis exists for concluding that had the evidence been presented at trial, the results of the proceedings might have been different." *Id.* (citing *State v. Roberto Vasques et al*, No. M2004-00166-CCA-R3-CD, 2005 WL 2477530, at \*13 (Tenn. Crim. App. Oct. 7, 2005)). The decision to grant or deny coram nobis relief rests within the sound discretion of the trial court. *Vasques*, 221 S.W.3d at 527-28.

The Petitioner contends that the trial court used an erroneous standard of review in assessing his coram nobis claims. We agree that the trial court used the wrong standard in finding that the petition failed to demonstrate that the alleged newly discovered evidence "would have resulted in a different judgment." The writ of error coram nobis

lies when the alleged newly discovered evidence "*may have* resulted in a different judgment, had it been presented at the trial." Tenn. Code Ann. § 40-26-105 (emphasis added). Despite the trial court's error, we affirm its summary dismissal on the basis of procedural and substantive defects in the petition.

*Statute of Limitations*

Petitions for writ of error coram nobis are subject to a one-year statute of limitations. Tenn. Code Ann. § 27-7-103 (2014); *Harris v. State*, 301 S.W.3d 141, 144 (Tenn. 2010). "The statute of limitations is computed from the date the judgment of the trial court becomes final, either thirty days after its entry in the trial court if no post-trial motions are filed or upon entry of an order disposing of a timely filed, post-trial motion." *Harris*, 301 S.W.3d at 144 (citing *Mixon*, 983 S.W.2d at 670). Calculating the statute of limitations in this manner is consistent with the "longstanding rule that persons seeking relief under the writ must exercise due diligence in presenting the claim." *Mixon*, 983 S.W.2d at 670; *Harris*, 301 S.W.3d at 144.

In response to the State's assertion that the trial court properly denied relief because the petition was untimely, the Petitioner argues in a reply brief that the State waived this argument by failing to raise the statute of limitations defense before the trial court. The State bears the burden of raising the statute of limitations as an affirmative defense. *Id.* However, the State's failure to do so will not result in a waiver "if the opposing party is given fair notice of the defense and an opportunity to rebut it. . . ." *Wilson v. State*, 367 S.W.3d 229, 234 (Tenn. 2012) (quoting *Sands v. State*, 903 S.W.2d 297, 299 (Tenn. 1995) (internal quotation marks omitted). For instance, when a petitioner raises the issue of statute of limitations and requests that it be tolled on due process grounds, the State does not waive the statute of limitations defense by failing to specifically plead it as an affirmative defense. *Id.*

In this case, it is unclear whether the State raised the statute of limitations issue before the trial court. Although the trial court's order indicates that the State filed a response to the petition, the State's response is not included in the appellate record. In any event, the Petitioner clearly acknowledged, in the petition for writ of error coram nobis, the untimeliness of the petition and argued that he was entitled to due process tolling. Consequently, we conclude that the State has not waived the statute of limitations defense by failing to specifically plead it as an affirmative defense. *Id.*

The record on appeal does not contain the Petitioner's judgments of conviction, but the judgments must have been final in the trial court by the time this court denied the Petitioner's direct appeal on October 20, 1993. Accordingly, the statute of limitations would have run, at the latest, by October 20, 1994. *See Harris*, 301 S.W.3d at 144. The

Petitioner did not file the instant petition until September 8, 2016, over twenty years beyond the limitations period.

*Due Process Tolling*

In some circumstances, due process considerations may require tolling the statute of limitations. *Workman v. State*, 41 S.W.3d 100, 101 (Tenn. 2001). To determine whether due process requires tolling, we must balance the State's interest in preventing "stale and groundless" claims against the petitioner's interest in having a hearing to present newly discovered evidence which may have led the jury to a different verdict if it had been presented at trial. *Id.* at 103. To balance these interests, courts should use a three-step analysis:

> (1) determine when the limitations period would normally have begun to run; (2) determine whether the ground for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are "later-arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim.

*Sands v. State*, 903 S.W.2d 297, 301 (Tenn. 1995); *see also Harris*, 301 S.W.3d at 145. Whether a claim is time-barred is a question of law, which we review *de novo*. *Harris*, 301 S.W.3d at 144 (citing *Brown v. Erachem Comilog, Inc.*, 231 S.W.3d 918, 921 (Tenn. 2007)).

The Petitioner argues that he is entitled to due process tolling because the following evidence was not presented at trial due to the State's withholding of *Brady* material: (1) Officer Charles Woods's 1986 arrest for an alleged rape, as established by documents attached to the petition and the alleged rape victim's affidavit; (2) evidence that only Honaker's fingerprints were on a coin jar in the stolen truck; and (3) Honaker's affidavit exonerating the Petitioner of the burglaries and thefts.

Under the three-step analysis from *Sands*, the limitations period in this case would have commenced when the Petitioner's judgments of conviction became final in the trial court sometime in 1992 or 1993. In his petition, the Petitioner asserts he first learned that Officer Charles Woods had been arrested for rape when he saw a television news report in 1999. The Petitioner does not state when he first became aware of Honaker's fingerprints on the coin jar, but we note that he addressed the fingerprints, as well as

Officer Woods's alleged rape, in his 2007 post-conviction proceedings.[5] *See James. W. Clark, Jr.,* 2009 WL 2991518, at \*5. As to Honaker's affidavit, the Petitioner claimed that Honaker was "ready to exonerate" him when he filed his first petition for writ of error coram nobis in November 2013, *see James Clark,* 2015 WL 177076, at \*2, and Honaker's affidavit is dated August 8, 2014. Thus, it appears that the grounds for relief may have arisen after the limitations period would normally have commenced.

However, even assuming that the grounds are "later-arising," we conclude that under the facts of the case, a strict application of the limitations period would not effectively deny the Petitioner a reasonable opportunity to present the claims. *See Sands,* 903 S.W.2d at 301. The Petitioner has clearly known about the "newly discovered evidence" for years now. He was aware of Officer Charles Woods's 1986 arrest for rape approximately seventeen years before he filed the instant petition, and he knew that only Honaker's fingerprints were found on the coin jar at least nine years before the filing of the petition. A petitioner seeking relief under the writ of error coram nobis "must exercise due diligence" in presenting his claims. *Mixon,* 983 S.W.2d at 670; *Harris,* 301 S.W.3d at 144. The Petitioner is not entitled to due process tolling, and these claims are time-barred.

Regarding Honaker's affidavit exonerating the Petitioner of the burglaries and thefts, the Petitioner contends that the two-year delay between the time he obtained the affidavit and the filing of the instant petition was due to the failures of his previous counsel, whom he hired in 2011 to prepare his first petition for writ of error coram nobis.[6] Regardless of the question of the timeliness of this claim, this court has previously determined that the Petitioner's allegations that Honaker "admitted to participating in the burglaries [and thefts] by himself" did not present a cognizable claim for error coram nobis relief. As this court explained:

> A person is criminally responsible for an offense committed by the conduct of another, if . . . [a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense.

---

[5] This court issued its opinion rejecting these claims as a basis for due process tolling in the post-conviction context on September 18, 2009, seven years before the instant petition was filed. *See James W. Clark, Jr.,* 2009 WL 2991518, at \*5-6.

[6] The Petitioner alleges that his previous counsel was eventually reprimanded by the Board of Professional Responsibility for his handling of the Petitioner's case, and he attached to his petition a copy of a letter from the Board of Professional Responsibility that discussed the reprimand.

Tenn. Code Ann. § 39-11-402(2). Here, the Petitioner was found at a pawn shop behind the steering wheel of a stolen truck, loaded with other stolen items, a short time after the burglaries and thefts. The Petitioner, along with Honaker, then negotiated with the employees of the pawn shop over the price of the stolen items. Additionally, the Petitioner "admitted that he shot two police officers, robbed one officer of his weapon, and stole a police car to avoid going back to jail for the burglaries." *[James] Clark*, 1993 WL 414015, at *3. As such, there was overwhelming evidence that the Petitioner, with at least the intent to benefit in the proceeds of the offenses, aided Honaker with respect to the burglaries and thefts. Therefore, a statement from Honaker, made twenty-three years after the fact, that the Petitioner did not participate in the burglaries and thefts fails to show that there may have been a different judgment if it had been presented at trial.

*James Clark*, 2015 WL 177076, at *3. Thus, this claim is previously determined, and the Petitioner is not entitled to relief on this ground.

*Failure to State a Cognizable Claim*

Finally, the remaining issues raised in the Petitioner's brief—claims relating to defects in proceedings before the Board of Judicial Conduct, the waiver of claims in other proceedings, the trial court's supposed failure to consider violations of the Petitioner's constitutional rights and "whether identical grounds may often be proved by different factual allegations[,]" and claims relating to ineffective assistance of counsel—fail to state a cognizable claim for coram nobis relief. *See State v. Glenn Bernard Mann*, No. W2006-01867-CCA-R3-CO, 2007 WL 2247237, at *4 (Tenn. Crim. App. Aug. 6, 2007), *perm. app. denied* (Tenn. Dec. 17, 2007); *Kenneth C. Stomm v. State*, No. 03-C-019110-CR-00342, 1992 WL 97081, at *1 (Tenn. Crim. App. May 12, 1992). The Petitioner is not entitled to relief.

## Conclusion

We determine that this appeal is frivolous and that the Petitioner is abusing the system. For the aforementioned reasons, the judgment of the coram nobis court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE

- 11 -